IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 11-cv-00215-RPM

BEAUVALLON CONDOMINIUM ASSOCIATION, INC.,

    Plaintiff,

v.

GRANITE STATE INSURANCE COMPANY,
PHILADELPHIA INDEMNITY INSURANCE COMPANY, and
GREAT AMERICAN INSURANCE COMPANY,

    Defendants.

---

## ORDER ON MOTIONS

The dispute in this insurance coverage action is whether the Defendants owe the Beauvallon Condominium Association, Inc. ("Plaintiff" or "the Association") a duty to defend the Association in the pending action entitled *J&J Property Investments, LLC v. Beauvallon Condominium Association*, Case No. 2009cv9436, in the District Court for the City and County of Denver, Colorado ("the Underlying Lawsuit").

On June 28, 2011, the court heard argument on the following motions: Defendant Granite State Insurance Company' motion to dismiss Plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(6); Defendant Great American Insurance Company's motion to dismiss Plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(6); Plaintiff's motion for partial summary judgment against Defendant Great American Insurance Company, and Plaintiff's motion for

partial summary judgment against Defendants Granite State Insurance Company and Philadelphia Indemnity Insurance Company.

The complaint in this action and the complaint in the Underlying Lawsuit allege the following:[1]

The Plaintiff is the condominium association for the Beauvallon condominium community, a mixed used condominium community located at 925 Lincoln Street, Denver, Colorado. (Compl. ¶ 8; Underlying Compl. ¶ 1.) The Association was established pursuant to Colo. Rev. Stat. § 38-33.3-201 et seq. and the Beauvallon Declaration dated March 3, 2004. (Underlying Compl. ¶ 6.)

In October 2005, J&J Property Investments, LLC ("J&J Property") purchased commercial space in the Beauvallon, located on the first two floors. (Comp. ¶ 10; Underlying Compl. ¶¶ 12-15.) J&J Property financed that purchase by obtaining a loan in the principal amount of $9,900,000.00. (Compl. ¶ 15; Underlying Compl. ¶ 14.) J&J Property then leased retail space to various tenants. (Compl. ¶ 10; Underlying Compl. ¶ 15.)

After J&J purchased the commercial space at the Beauvallon, retail tenants complained to J&J Property about problems with the common elements, including drainage from the roof and interior leakage from overhead plumbing defects. (Compl. ¶ 12; Underlying Compl. ¶ 16.) According to the allegations of the Underlying Complaint, the Beauvallon Declaration restricts an owner's conduct involving the construction, alteration or improvement affecting any common elements, and the Declaration and the Colorado Common Interest Ownership Act impose duties

---

[1] As used herein, "Compl." refers to the Complaint in this action, and "Underlying Compl." refers to the First Amended Complaint in the Underlying Lawsuit.

on the Association to maintain the common elements.  (Underlying Compl. ¶¶ 7-10, 50-51.)  The Underlying Complaint alleges that J&J Property made demands on the Association to repair the drainage and leakage defects and repair the common elements. (Compl. ¶ 13; Underlying Compl. ¶¶ 17, 32, 37, 52.)  The Underlying Complaint alleges that in 2007, the Association commenced a construction defect action against the builder of the Beauvallon and subsequently resolved that suit by settlement.  (Underlying Compl. ¶ 23.)

The Underlying Complaint alleges that despite J&J Property's repeated demands, the Association failed or refused to remedy problems with the property.  (Compl. ¶ 13; Underlying Compl. ¶¶ 17, 32, 37, 52.)  On February 7, 2008, J&J Property again requested that the Association repair the common elements, when one of J&J's tenants notified J&J that it would cease to pay rent if drainage and leakage problems were not remedied.  (Underlying Compl. ¶ 19.)  The Underlying Complaint alleges that on or about April 7, 2008, J&J Property notified the Association that J&J Property would be subject to lawsuits from tenants if the common elements were not repaired.  (Underlying Compl. ¶ 20.)  Two tenants filed suit against J&J Property as a result of roof and plumbing problems.  (Underlying Compl. ¶¶ 21, 24.)  The Underlying Complaint alleges that J&J Property lost rental income, was unable to lease retail space, and was unable to make timely payments to the lender that had financed J&J's purchase of space at The Beauvallon.  (Underlying Compl. ¶ 26.)  The lender commenced suit against J&J Property to collect amounts due on the loan, and in December 2008, J&J's property was placed in  receivership. (Underlying Compl. ¶ 27.)

On October 9, 2009, J&J Property filed the Underlying Lawsuit against the Association and, in a First Amended Complaint filed April 16, 2010, pleaded five claims for relief:

(1) breach of contract (i.e., the condominium declaration); (2) tortious interference with business relations; (3) trespass; (4) nuisance, and (5) negligence per se for violation of the Colorado Common Interest Ownership Act, Colo. Rev. Stat. §§ 38-33.3-101 to 319. (Compl. ¶¶ 8-9; Underlying Compl. ¶¶ 29-53.) J&J Property seeks damages from the Association, including but not limited to compensation for "the loss of tenants, loss of rent due from tenants, damages to its purchased property at the Beauvallon, inability to lease out its purchased property in the Beauvallon, inability to make timely payments on the Loan incurred in purchasing property in the Beauvallon, and lawsuits arising therefrom." (Underlying Compl. ¶¶ 33, 39, 43, 46.)

During the relevant time period, the Association was insured under a Non-Profit Executive Protection and Employment Practices Liability Insurance ("D&O") policy issued by Great American Insurance Company ("Great American"). The Association also was insured under commercial general liability ("CGL") policies issued by Granite State Insurance Company ("Granite State") and Philadelphia Indemnity Insurance Company ("Philadelphia Indemnity").

The Association timely tendered defense of the Underlying Lawsuit to Great American, Granite State, and Philadelphia Indemnity. All three insurers denied the Association's defense tender. The Association is incurring fees and expenses in the defense of that litigation.

In January 2011, the Association commenced this action against Great American, Granite State, and Philadelphia Indemnity, alleging four claims for relief: (1) breach of contract/duty to defend; (2) common law fad faith breach; (3) violation of Colo. Rev. Stat. §§ 10-3-1115 and 1116; and (4) declaratory judgment.

Diversity of citizenship provides the basis for federal jurisdiction. The law of Colorado governs this dispute.

*Defendant Granite State Insurance Company*

Granite State moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6), arguing that its Policies provide no coverage for the claims alleged in the Underlying Complaint. The Plaintiff opposed that motion and moved for partial summary judgment against Granite State, seeking determinations that (1) the allegations of the Underlying Complaint trigger Granite State's defense obligations; (2) Granite State breached its defense obligations; (3) Granite State is required to reimburse the Association for its defense costs and expenses incurred to date in the defending the Underlying Lawsuit, and (4) Granite State is obligated to fund the defense of the Association through the completion of the Underlying Lawsuit.

The existence of a duty to defend against a particular claim is a question of law. *Apartment Inv. & Mgmt. Co. (AIMCO) v. Nutmeg Ins. Co.*, 593 F.3d 1188, 1193 (10th Cir. 2010) (citing *Flannery v. Allstate Ins. Co.*, 49 F.Supp.2d 1223, 1227 (D.Colo.1999)). "When resolving an insurer's obligations in an anticipatory declaratory action brought before the conclusion of the underlying dispute, an insurer's duty to defend is determined from the face of the complaint." *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 828 (Colo.2004). The court must compare the allegations of the underlying complaint and the relevant provisions of the insurance policy. *See Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1089 (Colo.1991). "An insurer's duty to defend arises when the underlying complaint against the insurer alleges any facts that might fall within the coverage of the policy." *Hecla Mining*, 811 P.2d at 1092 (citation, footnote, brackets and internal quotation marks omitted).

Granite State provided commercial general liability coverage to Association under Policy No. 9196050-9196150, effective from October 31, 2005 to October 31, 2006, which was

renewed by Policy No. 6997113-8385192, effective from October 31, 2006 to October 31, 2007 (collectively, the "Granite State Policies").

The Granite State Policies provide that Granite State "will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." (Granite State Policies, Insuring Agreement Section I.1.a.)  "Property damage" is defined as "[p]hysical injury to tangible property" or "[l]oss of use of tangible property that is not physically injured." (*Id.* Section V.17(a) and (b).)

The Granite State Policies provide that the insurance applies to "property damage" only if the property damage is caused by an "occurrence." (*Id.* Section I.1.b.(1).)  In the Granite State Policies, "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* Section V.13.)

The issue is whether the Underlying Complaint alleges property damage caused by an "occurrence," i.e., an accident.

The term "accident" is not defined in the Granite State CGL Policies.  Colorado appellate courts have defined "accident" to mean an "unanticipated or unusual result flowing from a commonplace cause." *Hoang v. Monterra Homes (Powderhorn) LLC*, 129 P.3d 1028, 1034 (Colo. Ct. App. 2005) *rev'd on other grounds sum nom Hoang v. Assurance Co. of Am.*, 149 P.3d 798 (Colo. 2007); *Union Ins. Co. v. Hottenstein*, 83 P.3d 1196, 1201 (Colo.App.Ct.2003).

Granite State asserts that the claims alleged in the Underlying Complaint are premised entirely on the Association's breach of its contractual duty to maintain the common elements. Granite State contends that term "accident" in the definition of occurrence requires an element of fortuity, and a breach of contract is not such an event.

"The facts alleged in the underlying complaint, not the legal claims asserted by the plaintiff, determine the insurer's duty to defend." *Zurich Am. Ins. Co. v. O'Hara Regional Center for Rehabilitation*, 529 F.3d 916, 921 (10th Cir. 2008) (citing *Gerrity Co. v. CIGNA Property & Cas. Ins. Co.*, 860 P.2d 606, 607 (Colo.Ct. App.1993).

The factual allegations of the Underlying Complaint imply that some property damage was caused by water leakage and drainage problems that occurred after storms. Those allegations are sufficient to show property damage caused by an occurrence. The allegations of the Underlying Complaint triggered Granite State's defense obligation.

*Defendant Philadelphia Indemnity Insurance Company*

Philadelphia Indemnity issued Policy No. PHPK268002, for the period October 31, 2007 through October 31, 2008, and Policy No. PHPK357750, for the period October 31, 2008 through January 1, 2010 (collectively, "the Philadelphia Indemnity Policies").

The Plaintiff has established that it is a named insured under the Philadelphia Indemnity Policies. At the hearing, Philadelphia Indemnity acknowledged the designation of the named insured as "Beauvallon Homeowners Association" was a scrivener's error and endorsements have been executed to correct the error.

The issue with respect to the Philadelphia Indemnity Policies is whether the Underlying Complaint alleges property damage resulting from an "occurrence." In the Philadelphia Indemnity CGL Policies, the definition of "occurrence" is the same as in the Granite State CGL Policies. The occurrence issue has been discussed above. For those same reasons, the

allegations of the Underlying Complaint triggered Philadelphia Indemnity's defense obligation.

*Defendant Great American Insurance Company*

Great American moved to dismiss the Plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(6), arguing that exclusions in its Policy preclude coverage for the claims alleged in the Underlying Complaint. The Plaintiff opposed that motion and moved for partial summary judgment, seeking determinations of Great American's liability on the Plaintiff's first and fourth claims for relief.

Great American issued Non-Profit Organization Executive Protection and Employment Practices Liability Policy No. EPP3800071 to the Association, for the period October 31, 2008 through January 1, 2010. The Great American Policy's Insuring Agreement provides:

> If during the Policy Period or the Discovery Period any Claim is first made against an Insured for a Wrongful Act . . . the Insurer shall pay on their behalf Loss resulting from such Claim. The Insurer has the right and duty to defend any Claim to which this insurance applies, even if the allegations of the Claim are groundless, false or fraudulent.

(Great American Policy, Section I., Insuring Agreement.)

The term "wrongful act" is defined as follows:

> E.   "Wrongful Act" shall mean any actual or alleged error, misstatement, misleading statement, act or omission, neglect or breach of duty . . . by the Organization, and/or a Subsidiary, and/or any Insured Persons acting in their capacity with the Organization or a Subsidiary.

(*Id.*, Section III, Definitions.) The term "claim" is defined as follows:

> K.   "Claim" shall mean: (1) any proceeding initiated against an Insured, including any appeals therefrom, before (a) any governmental body which is legally authorized to render an enforceable judgment or order for money damages or other relief against an Insured, or (b) the Equal Employment Opportunity Commission, or any similar governmental body whose purpose is to address employment practices; or (2) any written demand seeking money damages for a Wrongful Act.

-8-

(*Id*., Section III, Definitions.)  The term "loss" is defined as follows:

> G.　Loss shall mean settlements and judgments, including punitive or exemplary damages or the multiple portion of any multiplied damage award, and subject to the provisions of Section V and VI, Costs of Defense incurred by the Insured, provided always, however, Loss shall not include taxes, criminal or civil fines or penalties imposed by law or any matter which may be deemed uninsurable under the law pursuant to which this Policy shall be construed. It is understood and agreed that the enforceability of the foregoing coverage shall be governed by such applicable law which most favors coverage for punitive or exemplary damages or the multiple portion of any multiplied damage award.

(*Id.* at Form D 9713-2 (01/97), Amendment to Section III.)

The Great American Policy contains a property damage exclusion which provides that the Policy does not apply to any Claim made against any Insured:

> D.　based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or any way involving . . . damage to or destruction of any tangible property, including the loss of use thereof . . . .

(*Id.*, Section IV, Exclusions.)

The property damage exclusion in the Great American Policy is not ambiguous.  Great American has satisfied its burden of establishing that the allegations of the Underlying Complaint are solely and entirely within the property damage exclusion.  Consequently, the allegations of the Underlying Complaint did not trigger a duty to defend on the part of Great American.

Great American also contends that coverage is precluded by the construction defect exclusion in its Policy.  Great American has not satisfied its burden of establishing that the claims alleged in the Underlying Complaint are solely and entirely within that exclusion.  That conclusion does not affect the result because the property damage exclusion operates to preclude any duty on the part of Great American with respect to the Underlying Lawsuit.

Accordingly, it is

ORDERED that Defendant Granite State Insurance Company's motion to dismiss the complaint (#14) is denied; and it is

FURTHER ORDERED that Defendant Great American Insurance Company's motion to dismiss the complaint (#15) is granted; and it is

FURTHER ORDERED that Plaintiff's motion for partial summary judgment against Defendant Great American Insurance Company (# 20) is denied; and its

FURTHER ORDERED that Plaintiff's motion for partial summary judgment against Defendants Granite State Insurance Company and Philadelphia Insurance Company (# 22) is granted, and it is

FURTHER ORDERED that further proceedings in this action are stayed until further order of the court.

Date:   June 29, 2011

BY THE COURT:

s/Richard P. Matsch

Richard P. Matsch, Senior District Judge